UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN KENDALL, on behalf of himself and others similarly situated, | Civil Action No. 15-6098 (FLW)(LHG) |
| Plaintiff, | **OPINION** |
| v. | |
| CUBESMART L.P., CUBESMART, CUBESMART MANAGEMENT LLC, CUBESMART ASSET MANAGEMENT, LLC, CHRISTOPHER MARR, AND XYZ COMPANIES, 1-10, | |
| Defendants. | |

**WOLFSON, United States District Judge:**

This matter comes before the Court on a motion filed by Plaintiff Steven Kendall ("Kendall" or "Plaintiff"), pursuant to 28 U.S.C. § 1447(c), seeking an order remanding this matter to state court based on a want of subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). For the following reasons, Plaintiff's motion is denied.

**I.    BRIEF FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following are facts drawn from the Complaint and declarations submitted by the parties, and are uncontested except where noted.[1] Defendants CubeSmart L.P.; CubeSmart; CubeSmart Management LLC; CubeSmart Asset Management, LLC; Christopher Marr; and XYZ Companies 1-10 (collectively "Defendants") operate a storage facility located in New Brunswick, New Jersey. Compl. ¶¶ 17-18. On October 20, 2010, Kendall executed a Self-Storage Lease

---

[1] *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008) (explaining that in evaluating a factual attack on subject matter jurisdiction, the District Court may make factual findings based on material beyond the pleadings).

1

("Lease") to rent a storage space from Defendants for a term of one month, which automatically extended each month. *Id.* at ¶ 18; Ex. A. Plaintiff was also provided with a New Jersey Rider ("Rider") when he executed the Lease. *Id.* at ¶ 30; Ex. B.

Defendants assert that from January 1, 2006 to September 29, 2011, they used the Lease and Rider to rent storage spaces to 21,000 customers. Declaration of Joel Keaton, dated October 1, 2015 [hereinafter "Keaton Dec."], ¶9. Defendants also assert that 14,500 of those 21,000 customers "started their rentals after July 3, 2009." *Id.* Finally, as of September 29, 2011, Defendants assert that they changed their form lease agreements from the Lease and Rider executed by Plaintiff and that, between September 29, 2011 and July 2, 2015, an additional 36,700 customers executed these new form lease agreements. *Id.* at ¶¶ 5, 10, Ex.'s A-D.

On July 2, 2015, Plaintiff filed this putative class-action lawsuit against Defendants in the Superior Court of New Jersey, Law Division, Middlesex County, under docket no. MID-L-3867-15 ("Complaint"). The Complaint alleges that Defendants violated the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, *et seq.*, because the Lease (Count I) and Rider (Count II) contain terms which violate the New Jersey Self Service Storage Facility Act ("SSFA"), N.J.S.A. 2A:44-187, *et seq.*, and the United States Bankruptcy Code, 11 U.S.C. ¶ 365.[2] The Complaint defines the putative class as:

> All persons who, any time on or after the day six years prior to the date this Complaint was filed, entered into a Lease Agreement for storage space at a U-Store-It or CubeSmart New Jersey storage location, and signed a standard Lease Agreement and/or New Jersey Rider with terms the same as or similar to the documents that Defendants used in their transaction with Plaintiff.

---

[2] Plaintiff also asserts an individual claim (Count III) alleging that Defendants violated the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*, and requests the "replacement cost of Plaintiff's damaged personal property" and the "cost of moving Plaintiff's damaged personal property from Defendants' New Brunswick location to his home in Florida for storage," Compl. ¶ 119(a), (b), and treble damages.

2

Compl. ¶ 68.  On a class-wide basis, the Complaint seeks only the minimum civil penalty of $100 under TCCWNA for each Lease and Rider, for a total of $200 per class member, plus attorneys' fees, interest, and costs of suit.  *Id.* at ¶¶ 97, 102.  The Complaint seeks trebled actual damages only with respect to Plaintiff's individual claim.  *Id.* at ¶ 119.

On August 10, 2015, Defendants removed this action under CAFA.  On September 9, 2015, Plaintiff filed the instant motion to remand, arguing that the matter was improperly removed because Defendants failed to plausibly allege that (1) the putative class consists of at least 100 members and (2) the amount in controversy exceeds the jurisdictional threshold.

## II.    STANDARD OF REVIEW

A civil action brought in state court may be removed by defendants to a federal district court if the district court has original jurisdiction over the claim.  28 U.S.C. § 1441(a); *see also Samuel-Bassett v. Kia Motors Am.*, 357 F.3d 392, 398 (3rd Cir. 2004).  Federal district courts have original jurisdiction on the basis of diversity of citizenship where (1) the matter in controversy exceeds the sum or value of $75,000, and (2) there is diversity of citizenship between each plaintiff and each defendant in the case.  *See, e.g.*, *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 148 (3rd Cir. 2009) (citing 28 U.S.C. § 1332(a)(1)).  Alternatively, pursuant to CAFA, federal district courts have original jurisdiction over class actions where (1) the matter in controversy (*i.e.*, the aggregated claims of the individual class members) exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) any member of a class of plaintiffs is a citizen of a state different from any defendant, and (3) the class has at least 100 members.  28 U.S.C. § 1332(d)(2)(A), (d)(5)(B), (d)(6); *Standard Fire Ins. Co. v. Knowles*, __ U.S. __, 133 S. Ct. 1345, 1348 (2013); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015).  "A party asserting federal jurisdiction in a removal case bears the burden of showing 'that the case is properly before the

3

federal court.'" *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 193 (3rd Cir. 2007)); *see also Morgan v. Gay*, 471 F.3d 469, 473 (3rd Cir. 2006), *cert. denied*, 552 U.S. 940 (2007). Any doubts must be resolved in favor of remand. *Samuel-Bassett*, 357 F.3d at 403.

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, __ U.S. __, 135 S. Ct. 547, 554 (2014). "Thus, the grounds for removal should be made in 'a short plain statement,' just as required of pleadings under Fed. R. Civ. P. 8(a)." *Grace v. T.G.I. Fridays, Inc.*, No. 14-7233, 2015 U.S. Dist. LEXIS 97408, at *8-9 (D.N.J. July 27, 2015) (citing *Dart Cherokee*, 135 S. Ct. at 553). No evidentiary support is required, and the Court should accept a defendant's allegations unless they are contested by the plaintiff or questioned by the Court. *See Dart Cherokee*, 135 S. Ct. at 553. When the sufficiency of the jurisdictional allegations in a notice of removal is challenged, the parties must submit proofs for the court to decide, by a preponderance of the evidence, whether the jurisdictional requirements are satisfied. *See id.* at 554.

### III.  DISCUSSION

Plaintiff argues that this matter should be remanded based on a lack of subject matter jurisdiction under CAFA because (1) the putative class has less than 100 members, and (2) the amount in controversy is less than $5 million. As discussed more fully below, the Court finds that (1) the putative class may contain at least 51,200 members; (2) that, for purposes of the amount in controversy analysis, the Court assumes a 30% attorneys' fee award where such fees are provided for by statute; and (4) assuming each putative class member might only recover the minimum civil penalty of $100 under the TCCWNA, along with a 30% attorneys' fee award, the amount in

controversy will be $6,656,000. Therefore, the putative class contains more than 100 members and the amount in controversy exceeds $5 million and, accordingly, this Court has subject matter jurisdiction under CAFA.

### A. The Putative Class Contains More than 100 Members.

Plaintiff first argues that Defendants' assertion regarding the putative class size "does not represent a plausible allegation regarding the number of putative class members who were provided documents during the class period which are the same or similar to the ones Plaintiff received." Plaintiff's Br. at 12. Defendants' notice of removal asserts that the "putative class consists of at least 100 members" because, during the class period, "Defendants entered into Lease Agreements and/or New Jersey Riders with thousands of individuals." Not. of Removal ¶¶ 2, 26. Specifically, Defendant asserts that "[o]n at least 62,000 occasions, a person or persons entered into lease agreements in New Jersey." *Id.* at ¶ 27. In opposition to Plaintiff's remand motion, Defendant submitted the Keaton Declaration, which avers that there are three distinct sub-groups that should be included in the putative class: (1) 6,500 individuals who signed Leases and received Riders prior to July 3, 2009, which were renewed or extended during the class period; (2) 14,500 individuals who entered into Leases and received Riders during the class period; and (3) 36,700 individuals who entered into leases between September 28, 2011 and July 2, 2015, during which time Defendants utilized lease documents that were different from (but similar to) the Lease that Plaintiff signed and the Rider he received.[3] Keaton Dec. ¶¶ 5, 9-10.

---

[3] Despite Mr. Keaton's declaration that Defendants have leased storage facilities to 62,000 individuals, it appears Defendants are asserting that the class contains 57,700 individuals.

Plaintiff, as master of his complaint, is entitled to circumscribe the definition of the proposed class so as to avoid federal jurisdiction. *See In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010); *Johnson v. Advance Am.*, 549 F.3d 932, 937 (4th Cir. 2008); *Casias v. Distrib. Mgmt. Corp.*, No. 11-0874, 2012 U.S. Dist. LEXIS 142693, at *11 (D.N.M. Sept. 26, 2012). The proposed class must only be defined in such a way that it is "sufficiently identifiable without being overly broad" so that it is "administratively feasible to determine whether a given individual is a member of the class." *White v. Williams*, 208 F.R.D. 123, 130 (D.N.J. 2002) (quoting *In re School Asbestos Litig.*, 56 F.3d 515, 519 (3d Cir. 1995)). Based on the definition of the class Plaintiff set forth in the Complaint, Compl. ¶¶ 68, 69, the Court finds that the putative class does not contain the 6,500 customer who signed Leases and received Riders before the class period, but does appear to include the 14,500 customers who signed Leases and received Riders during the class period and the 36,700 customers who signed leases between September 28, 2011 and July 2, 2015 that contain at least one term similar to those Plaintiff complains of in the Lease and Rider.

First, under New Jersey law,[4] "a month-to-month tenancy" is "a continuing tenancy and not an interest that [is] re-established each month." *Chase Manhattan Bank v. Josephson*, 135 N.J. 209, 224 (1994) (citing *Harry's Village, Inc. v. Egg Harbor Twp.*, 89 N.J. 576, 583 (1982)); *Stamboulos v. McKee*, 134 N.J. Super. 567, 570 (App. Div. 1975). The Lease at issue in this matter was for a one-month term, Compl. Ex. A, p. 1, ¶ 2, and contained an automatic extension provision, which provided: "the term of this Lease shall automatically be extended on a month-to-month basis on the same terms set forth herein until either party delivers to the other party at least 10 days'

---

[4] The Lease contains a choice-of-law provision which provides that it "shall be governed by and construed and enforced in accordance with the laws of the state where the Property is located." Compl. Ex. A, p. 3, ¶ 23.

prior written notice of its intention to terminate this Lease." *Id.* at p. 2, ¶ 4. Accordingly, the Lease created a month-to-month tenancy and not a new relationship every month it was extended. Therefore, the 6,500 individuals who signed Leases (and received Riders) prior to July 2, 2009 are not members of the class because they did not "enter into" and "sign[]" their Leases during the class period. Compl. ¶ 68. Moreover, these individuals' claims would be barred by TCCWNA's 6-year statute of limitations.[5] N.J.S.A. 2A:14-1; *see Sexton v. Wells Fargo Bank, N.A.*, No. GLO-L-814-13, 2014 N.J. Super. Unpub. LEXIS 2982, at *16-17 (Law Div. Dec. 23, 2014) (holding that TCCWNA violation accrues on date a plaintiff receives the document containing illegal provisions).

Second, the Complaint defines the class as including all persons who "signed a standard Lease Agreement *and/or* New Jersey Rider with terms the same as or similar to the documents that Defendants used in their transaction with Plaintiff," *id.* at ¶ 68 (emphasis added), and defines the terms "the same or similar" to the Lease and Rider to mean that such a document must "contain[]" the contractual provisions that Plaintiff complains of in the Complaint. *Id.* at ¶ 69(a)(i)-(vii), (b)(i). Importantly, the Complaint does not require a document to contain *every* complained-of term in order to be considered "the same of similar" to the Lease and Rider. Instead, it provides a list of eight provisions in the Lease which, like the definition of the class, contains the grammatical conjunction "and/or," *id.* at ¶ 69(a)(i)-(vii), along with one provision in the Rider, *id.* at ¶ 69(b)(i).

The end result of this language is that, to be a member of the class, a customer must have signed either a Lease or received a Rider (or both), during the class period, that has at least one of

---

[5] For this reason, this matter does not present the concern that different plaintiff classes with identical claims could bring artificially separate suits, distinguishable only by the time period they complain of, in order to avoid jurisdiction under CAFA, which the Sixth Circuit found to be improper in *Freeman v. Blue Ridge Paper Prods.*, 551 F.3d 405 (6th Cir. 2008).

the terms complained of in Plaintiff's Lease or Rider.  To be sure, the new form lease documents Defendants employed subsequent to September 28, 2011 do not contain all of the terms Plaintiff complains of in the Lease and Rider, but all four of the new form lease documents each contain at least one similar provision to those that Plaintiff complains of in the Lease.[6]  *Compare* Compl. ¶ 69(a)(vi) (defining same of similar document to include provision which "waives [lessee's] right to trial by jury"), *with* Keaton Dec. Ex. A, ¶ 38 (waving lessee's right to trial by jury); Ex. B, ¶ 38 (same); *compare* Compl. ¶ 69(a)(vii) (defining same of similar document to include provision which exculpates the owner from "loss or damage to any Personal Property arising from any cause whatsoever . . . regardless of whether such loss or damage is caused by the intentional or negligent acts or omissions of Owner . . . ."), *with* Keaton Dec. Ex. C, ¶ g (waiving lessee's claims against "Owner Parties[]" for claims for property damage except for those based on the Owner Parties' "intentional, willful, or wanton misconduct"); Ex. D, ¶ g (same).  Therefore, Defendants have shown that these 36,700 customers may be considered members of the putative class.

Third, Plaintiff has not submitted any evidence to contradict the Keaton Declaration's assertion that 14,500 customers signed Leases and/or received Riders identical to Plaintiff's lease during the class period.  Therefore, Defendants have shown that these 14,500 customers may be considered members of the putative class.

When combined, the 14,500 customers who signed Leases and/or received Riders during the class period and the 36,700 customers who signed leases between September 28, 2011 and July 2, 2015 that contained at least one term similar to those Plaintiff complains of in the Lease and

---

[6] The Court does not address the merits of whether these provisions violate any "clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law[.]" N.J.S.A. 56:12-15.

Rider, result in a putative class of 51,200 members. Accordingly, the Court finds that Defendants have shown by a preponderance of the evidence that the putative class exceeds 100 members.

### B. The Amount in Controversy Exceeds $5 Million.

Since the putative class contains at least 51,200 members, even if every class member is only awarded the $100 minimum civil penalty under the TCCWNA, N.J.S.A. 56:12-17, the amount in controversy will be $5,120,000,[7] which exceeds the minimum jurisdictional threshold. However, the Court will also address Plaintiff's argument that the Court cannot include an award of attorneys' fees when determining whether the jurisdictional threshold is met because such an award would be speculative and based on conjecture. Plaintiff is incorrect.

An award of attorneys' fees must be included as part of the amount in controversy determination where such an award is provided for by statute. *See, e.g.*, *Alegre v. Atl. Cent. Logistics*, No. 15-2342, 2015 U.S. Dist. LEXIS 100214 at *16 (D.N.J. July 31, 2015) ("Plaintiff seeks reasonable attorneys' fees as part of the class recovery, and the assessment of the amount in controversy must account for that relief.") (citing *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *Goldberg v. Healthport Techs., LLC*, No. 14-2810, 2014 U.S. Dist. LEXIS 104676, at *7-8 (D.N.J. July 30, 2014) (citing *Frederico*, 507 F.3d at 199). The TCCWNA provides for an award of attorneys' fees. N.J.S.A. 30:13-8(a). Therefore, attorneys' fees must be included in the Court's determination of the amount in controversy.

Of course, at this stage of the litigation it is "not possible to determine with precision the amount of attorneys' fees plaintiff may recover." *Faltaous v. Johnson & Johnson*, No. 07-1572,

---

[7] The Court does not address whether the putative class will be entitled to a $100 minimum civil penalty on a per-class member, per-document, or per-contract-provision basis; nor does the Court address whether the circumstances of this case will merit increasing any eventual award above the $100 minimum civil penalty. N.J.S.A. 56:12-17.

2007 U.S. Dist. LEXIS 99473, at *31-32 (D.N.J. Oct. 11, 2007), *adopted*, 2007 U.S. Dist. LEXIS 81775 (D.N.J. Nov. 2, 2007). To resolve this difficulty, courts within this district have adopted a "reasonableness approach," which utilizes the median attorneys' fee award of 30% when determining the amount in controversy. *See, e.g.*, *Grace*, 2015 U.S. Dist. LEXIS 97408, at *25-26; *Mazzucco v. Kraft Foods Global, Inc.*, No. 11-2430, 2011 U.S. Dist. LEXIS 150217, at *30-31 (D.N.J. Nov. 23, 2011), *adopted*, 2011 U.S. Dist. LEXIS 149754 (D.N.J. Dec. 30, 2011); *Faltaous*, 2007 U.S. Dist. LEXIS 99473, at *31-32. Therefore, for the purpose of the amount in controversy analysis, this Court will apply an attorneys' fee award of 30% of the potential judgment of $5,120,000, *i.e.*, an attorneys' fee award of $1,536,000, and this raises the total amount in controversy in this matter to $6,656,000.

Accordingly, for the purpose of the amount in controversy analysis, the Court finds that Defendants have shown by a preponderance of the evidence that the amount in controversy will exceed $5 million.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's motion to remand is DENIED.

Dated: November 19, 2015

/s/ The Honorable Freda L. Wolfson

United States District Judge