**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ———————————————— : | Civil Action No. 15-6098 (FLW)(LHG) |
| STEVEN KENDALL, on behalf of himself : | |
| and others similarly situated, : | **OPINION** |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| CUBESMART L.P., CUBESMART, : | |
| CUBESMART MANAGEMENT LLC, : | |
| CUBESMART ASSET : | |
| MANAGEMENT, LLC, CHRISTOPHER : | |
| MARR, AND XYZ COMPANIES, 1-10, : | |
| : | |
| Defendants. : | |
| ———————————————— : | |

**WOLFSON, United States District Judge:**

This matter comes before the Court on a motion filed by Defendants CubeSmart L.P.;

CubeSmart; CubeSmart Management LLC; CubeSmart Asset Management, LLC; Christopher

Marr; and XYZ Companies 1-10 (collectively "Defendants"), seeking dismissal of the Complaint

filed by Plaintiff Steven Kendall ("Kendall" or "Plaintiff") pursuant to Federal Rule of Civil

Procedure 12(b)(6).  Plaintiff leased a storage space from Defendants in 2010 and subsequently

discovered that his personal property had been damaged by a water leak in the rental unit.  Plaintiff

now brings suit alleging that (1) on a putative class-wide basis, the leasing documents for the rental

unit included provisions which violate clearly established consumer rights under decisional law in

New Jersey; the New Jersey Self Service Storage Facility Act ("SSFA"), N.J.S.A. 2A:44-187, *et*

*seq.*; and the United States Bankruptcy Code, 11 U.S.C. § 365, in violation of the New Jersey

Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, *et seq.*,

1

and (2) individually, that Plaintiff's leasing documents contained a limitation on liability provision which violated the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*  For the following reasons, Defendants' motion to dismiss is denied in part and granted in part.

Specifically, Defendants' motion to dismiss Count I is denied to the extent that this Count sufficiently alleges four violations of N.J.S.A. 56:12-15 as to all Defendants, except Marr; all of Plaintiff's claims against Marr in Count I are dismissed without prejudice.  Defendants' motion to dismiss Counts I and II of the Complaint is granted to the extent that those counts fail to allege violations of N.J.S.A. 56:12-16, and those claims are dismissed without prejudice.  Defendants' motion to dismiss Count III is granted, and Plaintiff's claim under the CFA is dismissed without prejudice.

## I.    BRIEF FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are drawn from the Complaint and attached exhibits, and are assumed to be true.  Defendants[1] operate a storage facility located in New Brunswick, New Jersey.  Compl. ¶¶ 17-18.  On October 20, 2010, Kendall executed a Self-Storage Lease ("Lease") to rent a storage space from Defendants for a term of one month, which automatically extended each month.[2]  *Id.* at ¶ 18; Ex. A.  Kendall alleges that Defendants sent him monthly invoices for rent and annual rate change notices, which informed him of rent increases and that "[a]ll other terms of [the] rental agreement continue to remain in effect."  *Id.* at ¶¶ 40-43; Ex. D.

---

[1] The Complaint alleges that Marr is the President of Cubesmart and that he set the policies and practices of Cubesmart complained of in the Complaint.  *Id.* at ¶¶ 13-15.

[2] The Lease was entered into by Kendall and Storage Asset Management, LLC, which the Complaint alleges "was an agent for U-Store-It and is an associated name of Defendant CubeSmart Asset Management, LLC."  *Id.* at ¶ 19.

According to the Complaint, the Lease allegedly contains provisions which (1) purport to exculpate Defendants from all liability including, but not limited to, liability for personal injury claims by business invitees arising out of Defendants' own intentional or negligent acts or omissions; (2) permit Defendants to sell personal property at (i) private sales (ii) without notice; and (3) permit Defendants to declare the Lease in default in the event that a lessor files for bankruptcy. *See generally id.* at ¶ 94(a)-(d); Ex. A ¶¶ 14, 15, 17.  In addition, the Lease included a provision in un-bolded, non-underlined text which limited the value of the property Kendall could store in the rental unit to $5,000.  *Id.* at ¶¶ 109-10; Ex. A, ¶ 9.  Kendall alleges that the text of this provision was never modified in any of the monthly invoices for rent and annual rate change notices he received from Defendants.  *Id.* at ¶¶ 113-14.  Defendants also provided Kendall with a New Jersey Rider ("Rider") when he executed the Lease.[3]  *Id.* at ¶ 30; Ex. B.

Kendall used his rental unit to store furniture and other personal items.  *Id.* at ¶ 38.  Kendall alleges that he "intended to store these goods in his rented storage unit until he and his wife purchased a new home at which time [Kendall] would move his personal property from the storage unit into the new home."  *Id.* at ¶ 39.  On December 20, 2014, Kendall and his wife went to unload their personal property from the rental unit "and have it shipped to a new home in Florida," when he discovered that his property was water damaged and that there was a "tear in the roof of his rented storage unit that was also wet."  *Id.* at ¶ 46-48.  At Defendants' suggestion, Kendall submitted a claim under his renter's insurance policy to recover the value of his damaged personal property, but that claim was denied based on a policy exclusion for water damage resulting from

---

[3] The Rider was entered into between Kendall and YSI Management LLC, which the Complaint alleges was "an agent of U-Store-It and is an associated name of Defendant CubeSmart Management, LLC."  *Id.* at ¶¶ 31-32.

wear and tear.  *Id.* at ¶¶ 54, 57-58.  On February 1, 2015, Kendall requested that Defendants pay him $40,874.96 to "resolve the property damage matter."[4]  *Id.* at ¶¶ 59-60; Ex.'s I, J.

By letter dated February 9, 2015, Defendants responded to Kendall's demand by highlighting that Kendall had declined to participate in CubeSmart's Property Guard program, as indicated in Section 2 of the Property Guard form, which stated that "[t]he most the Owner will pay for loss of or damage to your property under this program is $0," and that the Lease required Kendall to not store more than $5,000 of personal property in the storage unit.  *Id.* at ¶¶ 61-63; Ex. K.  Nevertheless, Defendants offered to settle Kendall's claim for $5,000 and attached a General Release of Liability for Kendall's signature.  *Id.* at ¶¶ 63- 64, Ex.'s K, L.  Kendall did not sign the General Release of Liability.  *Id.* at ¶ 65.

On July 2, 2015, Plaintiff filed this putative class-action lawsuit against Defendants in the Superior Court of New Jersey, Law Division, Middlesex County, under docket no. MID-L-3867-15.  On a class-wide basis, the Complaint alleges that Defendants violated the TCCWNA because the Lease (Count I) and Rider (Count II) contain terms which violate the New Jersey decisional law, the SSFA, and the United States Bankruptcy Code.  With respect to these counts, the Complaint seeks only the minimum civil penalty of $100 under TCCWNA for each Lease and Rider, for a total of $200 per class member, plus attorneys' fees, interest, and costs of suit.  *Id.* at ¶¶ 97, 102.  The Complaint also asserts an individual claim (Count III) alleging that Defendants violated the CFA, and requests the "replacement cost of Plaintiff's damaged personal property"

---

[4] Specifically, Kendall requested (1) $33,904.96 as the replacement cost of the damaged property; (2) $5,092, which represented 50% of the amount Kendall paid Defendants in rent from October 2010 to December 2014; and (3) $1,878, which represented 30% of the moving costs allegedly incurred by Kendall.  *See id.* at Ex. I.

and the "cost of moving Plaintiff's damaged personal property from Defendants' New Brunswick location to his home in Florida for storage," *id.* at ¶ 119(a), (b), and treble damages.

On August 10, 2015, Defendants removed this action under the Class Action Fairness Act ("CAFA"). On September 9, 2015, Plaintiff filed a motion to remand, which this Court denied on November 19, 2015. *See Kendall v. CubeSmart L.P., et al.*, No. 15-6098, 2015 U.S. Dist. LEXIS 156447 (D.N.J. Nov. 19, 2015). While the remand motion was pending, Defendants filed the instant motion to dismiss on October 5, 2015.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must

be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.   DISCUSSION

### A.   TCCWNA Claims (Counts I and II)

The TCCWNA "does not establish rights or seller responsibilities," itself, but "[r]ather, the statute bolsters rights and responsibilities established by other laws." *Watkins v. DineEquity, Inc.*, 591 F. Appx. 132, 135 (3d Cir. 2014). To accomplish this end, the TCCWNA provides that an aggrieved consumer may seek a minimum civil penalty of $100 (in addition to actual damages) against any person "who violates the provisions of this act." N.J.S.A. 56:12-17. The TCCWNA's

civil penalty is a "cumulative" remedy to those provided by other laws.  N.J.S.A. 56:12-18; *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 125 (2014).

Plaintiff's TCCWNA claims are organized by the operative legal documents, with Count I relating to the Lease and Count II relating to the Rider.  Count I alleges violations of both Sections 15 and 16 of the TCCWNA as to the Lease, whereas Count II alleges only one violation of Section 16 of the TCCWNA in the Rider.   Both Sections 15 and 16 are intended to "collectively prevent deceptive practices in consumer contracts.  However, each section affords different protections and may arise from different harms."  *Walters v. Dream Cars Nat'l, LLC*, Dkt. No. BER-L-9571-14, 2016 N.J. Super. Unpub. LEXIS 498, *15 (Law Div. Mar. 7, 2016).  Accordingly, the Court will analyze the claims under each section separately.  As discussed in more detail below, Plaintiff has sufficiently alleged four violations of Section 15 of the TCCWNA in Count I of the Complaint, but has failed to adequately plead a violation of Section 16 of the TCCWNA in Counts I and II.

### i.      Section 15 of the TCCWNA

Section 15 of the TCCWNA provides, in relevant part, that:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15.  This provision "establishes liability whenever a seller offers a consumer a contract, the provisions of which violate any legal right of a consumer."  *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 278 (App. Div. 2007), *aff'd on other grounds*, 197 N.J. 543 (2009).  To state a claim under Section 15 of the TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer; (2) the defendant is a seller, lessor, creditor, lender or

bailee; (3) the defendant offers the plaintiff a contract or gives or displays any written notice or sign; and (4) the contract, notice, or sign includes a provision that violates any legal right of a consumer or responsibility of the seller, lessor, creditor, lender or bailee. *Watkins*, 591 F. Appx. at 135 (quoting *Bosland*, 396 N.J. Super. at 278).

At the outset, Plaintiff must identify which provisions of the relevant documents he alleges violate a clearly established right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee. *See Skypala v. Mortgage Electronic Reg. Sys.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009); *Rivera v. Wash. Mut. Bank*, 637 F. Supp. 2d 256, 268 (D.N.J. 2009). The Complaint identifies four such provisions (in three paragraphs of the Lease) in this matter; specifically: (1) a provision in Paragraph 14 which purports to exculpate Defendants from all liability including, but not limited to, liability for personal injury claims by business invitees arising out of Defendants' own intentional or negligent acts or omissions; (2) two provisions in Paragraph 15, which permit Defendants to sell personal property at (i) private sales (ii) without notice; and (3) a provision of Paragraph 17, which permits Defendants to declare the Lease in default in the event that a lessor files for bankruptcy. *See generally id.* at ¶ 94(a)-(d); Ex. A ¶¶ 14, 15, 17. As discussed in more detail below, Plaintiff has sufficiently alleged that these provisions violate clearly established legal rights of a consumer and/or responsibilities of a seller, lessor, creditor, lender or bailee. Accordingly, Defendants' motion to dismiss Count I of the Complaint, to the extent those accounts assert violations of Section 15 of the TCCWNA, N.J.S.A. 56:12-15, is denied.[5]

### 1.    Paragraph 14

Plaintiff alleges that Paragraph 14 of the Lease unlawfully purports to absolve Defendants from all liability including, but not limited to, liability for personal injury claims by business

---

[5] The claims against Defendant Marr will be analyzed separately, *infra.*

invitees arising out of Defendants' own intentional or negligent acts or omissions.  Compl. ¶¶ 89,

94(d).  The exculpatory provision in Paragraph 14 provides, in relevant part:

> Neither Owner nor Agent shall be liable to Occupant or any other party for personal injury or loss or damage to any Personal Property arising from any cause whatsoever, including, but not limited to, interruption or discontinuance of utilities, burglary, theft, vandalism, fire, water damage, mysterious disappearance, earthquake, hurricane, rain, explosion, bursting pipes, vermin, rodents, mold, mildew or acts of God, regardless of whether such loss or damage is caused by the intentional or negligent acts or omissions of Owner, Agent, Owner's or Agent's agents, Occupant or any other party.

*Id.* Ex. A ¶ 14.  A similar lease provision for a storage rental unit was recently held to violate a

business owner's duty to maintain its premises for business invitees under New Jersey law.

*Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 514 (D.N.J. 2014).  In denying a motion

to dismiss the plaintiff's claim that the substantially similar exculpatory provision violated the

TCCWNA in *Martinez-Santiago*, the court held:

> [H]ere Public Storage is under a legal duty to maintain its premises for business invitees.  This duty was clearly established at the time that Plaintiff signed her lease. *The exculpatory provision, on its face, provides that Public Storage is not liable for its own negligence, gross negligence or recklessness, even though, under common law, Public Storage has a duty to guard against any known dangerous conditions on its property or conditions that should have been discovered*. . . . Businesses are in the best position to maintain their premises for the safe use of customers, and enforcing the exculpatory provision would give Public Storage permission to be careless -- negligent, reckless -- in the maintenance of its property.  Accordingly, the Court holds that the Amended Complaint states a plausible claim that the exculpatory provision is not enforceable, because Defendant has a legal duty to maintain its premises, and relieving businesses from that duty to business invitees allegedly adversely affects the public interest.

*Id.* (emphasis added).  I agree with the court's findings in *Martinez-Santiago*.  Indeed, business

owners cannot disclaim their legal duty to maintain their premises for business invitees.  Here,

Paragraph 14 of the Lease similarly seeks to exculpate Defendants for personal injury claims

"arising from any cause whatsoever . . . regardless of whether such loss or damage is caused by

the intentional or negligent acts or omissions of [Defendants]."  Compl. Ex. A ¶ 14.

Defendants argue that the "primary focus" of Paragraph 14 is to make clear that Defendants will not insure the property Plaintiff stored in the rental unit, and that "[w]hile Paragraph 14 also contains a brief reference to 'personal injury,' it does not purport to exculpate CubeSmart from personal injuries due to its own 'intentional or negligent' acts or omissions." Def. Br. 15-16, 18-19. Defendants also point out that the exculpatory clause must be read holistically, emphasizing that the provision includes a "lengthy list of external and third-party causes,"[6] which Defendants characterize as "clear limiting language."[7] Def. Reply Br. 8-9. However, it is unclear how Defendants reasonably can interpret that the listing of external and third-party causes limits the scope of the exculpatory clause; indeed, the list of these occurrences is immediately preceded by the phrase "including, but not limited to," which plainly indicates that the list of external and third-party causes is not intended to limit the exculpatory clause, but rather to set forth examples. *See Cablevision of Oakland, LLC v. CK Bergen Holdings, LLC*, No. A-2767-12T4, 2014 N.J. Super. Unpub. LEXIS 491, *11 (App. Div. Mar. 11, 2014) ("It is well-settled that the phrase 'including but not limited to' is used to convey an unrestricted list of examples.") (citing *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 280 (3d Cir. 1995)). Moreover, Paragraph 14 goes on to make clear that, even though Defendants shall not be liable "for personal injury or loss or damage to any Personal Property arising from any cause whatsoever" – including the external and third-party causes – Defendants will also not be held liable "regardless of whether such loss or

---

[6] "[I]nterruption or discontinuance of utilities, burglary, theft, vandalism, fire, water damage, mysterious disappearance, earthquake, hurricane, rain, explosion, bursting pipes, vermin, rodents, mold, mildew or acts of God." *Id.* Ex. A ¶ 14.

[7] Defendants also argue that Paragraph 9's limitation on the value of property Plaintiff could store in the rental storage unit to $5,000 is not a violation of TCCWNA. However, the Complaint does not allege that Paragraph 9 is a violation of TCCWNA. *See* Compl. ¶ 94(d). Instead, the Complaint alleges that Paragraph 9 constitutes a violation of the Consumer Fraud Act. *Id.* at ¶¶ 103-19; *see infra* Sec. III.B.

damage is caused by the intentional or negligent acts or omissions of Owner, Agent, Owner's or Agent's agents, Occupant or any other party."  Compl. Ex. A ¶ 14.

In short, the exculpatory clause of Paragraph 14 is effectively indistinguishable from the clause held to violate a business owner's responsibility to maintain its premises for its business invitees in *Martinez-Santiago*.  Accordingly, Defendants' motion to dismiss Plaintiff's claim that the exculpatory provision of Paragraph 14 of the Lease violated Section 15 of the TCCWNA is denied.

### 2.      Paragraph 15

Plaintiff alleges that Paragraph 15 of the Lease, which provides, in relevant part, that if Plaintiff defaults on the Lease, "[t]he Owner may sell the personal Property . . . at public or private sale," and that "the Owner may sell Personal Property, or any thereof, without notice to Occupant," Compl. Ex A ¶ 15, violates a clearly established right under the SSFA.  *Id.* at ¶¶ 86-87, 94(a), (b). The SSFA provides, in relevant part, that (1) "[a] sale of the personal property shall be public and shall be held at the self-service storage facility, at the nearest suitable place where the personal property is held or stored," N.J.S.A. 2A:44-191(g), and (2) that an "occupant shall be notified" prior to the sale of an occupant's personal property, N.J.S.A. 2A:44-191(c)(1)-(5).  This Court finds that Plaintiff has sufficiently alleged that the Paragraph 15 of the Lease contains terms which violate clearly established rights under the SSFA.

Nonetheless, Defendants argue that the Rider cures this violation in the Lease by including terms which require the sale of any property to be at a public sale, but the Rider contains no such term.  Instead, the Rider provides that "*If*, as a result of Occupant's default, Owner proceeds with a public sale of the Personal Property pursuant to N.J.S.A. 2A:44-191, such sale of personal property shall be held at the Property, or at the nearest suitable place to where the Personal Property

is held or stored." *Id.* Ex. B ¶ 4 (emphasis added).  As Plaintiff correctly argues, this provision of the Rider does not require that the sale to be public; rather, the use of the modifier "if" suggests that Defendants continued to retain the option, set forth in the Lease, of proceeding with a private sale if they so choose.[8]  Similarly, with respect to Defendants' argument that the Rider cures the Lease's provision which allows a sale to occur without notice, Defendants cannot point to any such provision in the Rider.  Paragraph 3 on the Rider merely provides that:  "Any notice, including, without limitation, the Denial Notice shall be presumed delivered when it is deposited with the United States Postal Service and properly addressed with postage prepaid." *Id.* Ex. B ¶ 3.  While this provision states that any notice Defendants send will be presumed received when mailed, it contains no requirement that a notice actually be mailed prior to a sale and, therefore, does not unequivocally modify the Lease's provision that sales of personal property may be made without notice to the occupant.

Nor does the Rider's general reference that a sale of personal property will conform to the requirements of the SSFA cure the TCCWNA violation, as this merely shifts the onus on to the consumer to discover that the SSFA requires that such a sale must be public.  To be sure, "TCCWNA is not triggered merely because a consumer, unfamiliar with New Jersey law, cannot discern with certainty *how far a provision extends*." *Walters*, 2016 N.J. Super. Unpub. LEXIS 498 at *19 (citing *Sauro v. L.A. Fitness Int'l, LLC*, 12-3682, 2013 U.S. Dist. LEXIS 58144, *29-30

---

[8] Defendants' argument that the Rider's provision would ultimately be construed in favor of consumers (and in accordance with the SSFA) if a consumer brought suit misses the point.  The TCCWNA was designed to combat the business practice of including terms in consumer contracts which, although ultimately unenforceable, deceive consumers into failing to enforce their rights in the first place.  *See* Sponsors' Statement, Statement to Assembly Bill No. 1660 (May 1, 1980) ("Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights.").

(D.N.J. Feb. 13, 2013)) (emphasis added).  "[A provision's] language might give an inattentive reader the wrong impression about the law, if the reader skips over . . . limiting phrases, such as 'to the fullest extent permitted by law' or 'as is permitted by law,'" without violating TCCWNA. *Id.* (quoting *Sauro*, 2013 U.S. Dist. LEXIS 58144 at *4-5, 29-30).  However, that is not the case here.  Paragraph 14 does not merely state that a sale may occur, as permitted by law, leaving it to the consumer to discover that only public sales are permitted under New Jersey law.  Instead, Paragraph 14 unequivocally states that a *private* sale may occur:  "Owner may sell the Personal Property, or any part thereof, without notice to Occupant, at public or private sale in the manner permitted by applicable law," Compl. Ex. A ¶ 15, and in the separate Rider, that Defendants' "sale or other disposition" will be pursuant to the SSFA, *id.* Ex. B ¶ 2.  Although TCCWNA does not require consumer contracts to spell out every provision of law with which its terms seek to conform,[9] a seller cannot sidestep TCCWNA by merely including a broad savings clause which acts to nullify unenforceable terms made explicit in the contract.  Stated another way, TCCWNA permits sellers to expand *valid* terms of a consumer contract so that they extend to the fullest degree allowed by law.  But sellers cannot include *invalid* terms, discouraging consumers from exercising their clearly established rights and, at the same time, avoid liability under TCCWNA by including general assurances that those terms of the consumer contract would only be exercised in compliance with applicable law.

---

[9] *See Walters*, 2016 N.J. Super. Unpub. LEXIS 498 at *13 ("[T]he Legislature intended to prevent and remediate the inclusion or omission of certain confusing or illegal provisions that deny a consumer of his or her rights or remedies, or that obscure those rights or remedies.  Nowhere in the statutory text or the legislative history is the requirement of the seller to explain every nuance of New Jersey law.").

Accordingly, Defendants' motion to dismiss Plaintiff's claim that the provisions of Paragraph 15 of the Lease allowing private sales without notice violated Section 15 of the TCCWNA is denied.

### 3.     Paragraph 17

Plaintiff alleges that Paragraph 17 of the Lease, which provides that if Plaintiff files for bankruptcy Defendants may "declare this Lease to be in default and pursue the rights and remedies in Paragraph 15," Compl. Ex. A ¶ 17, constitutes an *ipso facto* clause in violation of the Bankruptcy Code, 11 U.S.C. § 365. *Id.* at ¶¶ 88, 94(c). The Bankruptcy Code provides that an unexpired lease of a bankruptcy debtor:

> may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on-- . . . (B) the commencement of a case under this title[.]

11 U.S.C. § 365(e)(1); *see In re Woskob*, 305 F.3d 177, 184-85 (3d Cir. 2002), *cert. denied*, 538 U.S. 961 (2003); *In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 298 (3d Cir.), *cert. denied*, 531 U.S. 873 (2000); *In re Am. Home Mortg. Holdings, Inc.*, 388 B.R. 69, 78 (Bankr. D. Del. 2008). The Court finds that Plaintiff has sufficiently alleged that the paragraph 17 of the Lease contains terms which violates a clearly established consumer right or the responsibility of a seller, lessor, creditor, lender, or bailee under the Bankruptcy Code.[10]

---

[10] Defendants argue that there is no consumer right at issue with respect to this provision, since the filing of a bankruptcy petition operates to create a bankruptcy estate, 11 U.S.C. § 541, and, therefore, any "right" implicated by this provision of the Lease would belong to the bankruptcy estate and not Plaintiff as the debtor. However, TCCWNA places a dual prohibition on consumer contracts, forbidding consumer contracts from containing either "any provision that violates any clearly established legal right of a consumer *or* responsibility of a seller, lessor, creditor, lender or bailee." N.J.S.A. 56:12-15 (emphasis added). Therefore, even if this Court were to hold that any enforcement of this right would have to be asserted by the debtor/consumer's prospective bankruptcy estate, that does not relieve Defendants of the responsibility to refrain from offering contracts containing *ipso facto* provisions to consumers.

Nevertheless, Defendants argue that Paragraph 17 only provides that, in the event that Plaintiff files a bankruptcy petition, Defendants "may" at their "option" "declare this Lease to be in default *and pursue the rights and remedies in Paragraph 15*."  Compl. Ex. A ¶ 17 (emphasis added).  Paragraph 15, in turn, provides that upon a declaration of default, Paragraph 15 of the Lease Agreement then provides that Defendants "may . . . terminate this Lease *in the manner provided by law*. . . ."  *Id.* Ex. A at ¶ 15 (emphasis added).  When read in tandem, Defendants argue this Paragraph does not contain an *ipso facto* clause because it does not provide for the "automatic" termination of the Lease, but merely purports to empower Defendants to declare a default if Plaintiff files a bankruptcy petition and Defendants seek to terminate the Lease "in a manner provided by law."   The Court disagrees.

Section 365 of the Bankruptcy Code recognizes no distinction between clauses which provide an "option" to hold a contract in default and ones which "automatically" work a default in the event of a bankruptcy filing, since the end result of either is effectively equivalent, that is, the contract would be modified by virtue of the bankruptcy filing, in violation of Section 365, even if Defendants take no action to exercise their purported option.  *See In re Blakeley*, 363 B.R. 225, 231 n.8 (Bankr. D. Utah 2007) ("A contract provision which *permits* a creditor *to declare a contract in default* by virtue of the other party's insolvency or bankruptcy is generally referred to as an *ipso facto* clause. The Bankruptcy Code prevents the operation of contract *ipso facto* clauses at 11 U.S.C. §§ 541(c), 363(l) and 365(e).") (emphasis added); *see also Coastal Fed. Credit Union v. Hardiman*, 398 B.R. 161, 166 n.1 (E.D.N.C. 2008); *In re Jones*, 397 B.R. 775, 790 (S.D. W. Va. 2008), *aff'd*, 591 F.3d 308 (4th Cir. 2010).  Indeed, the legislative history of Section 365 negates Defendants' attempt to limit the Code's prohibition to only those clauses which require "automatic" termination of a contract in the event of a bankruptcy filing:   "Subsection (e)

invalidates *ipso factor* [sic] or bankruptcy clauses.  These clauses, protected under present law, automatically terminate the contract or lease, *or permit the other contracting party to terminate* the contract or lease, in the event of bankruptcy."  *In re Rose*, 21 B.R. 272, 276 (Bankr. D.N.J. 1982) (quoting House Report No. 95-959, 95th Cong., 1st Sess. 348-9 (1977)) (citing Senate Report No. 95-989, 95th Cong., 2d Sess. 59 (1978)) (emphasis added); *see also In re Tobago Bay Trading Co.*, 112 B.R. 463, 467 n.4 (Bankr. N.D. Ga. 1990) ("*Ipso facto* clauses automatically terminate the lease or permit the lessor to terminate, at his option, in the event of bankruptcy or some other insolvency event.").  Moreover, as with Paragraph 15's savings clause, this TCCWNA violation cannot be cured by the inclusion of the savings language that Defendants may only seek to terminate the Lease "in a manner provided by law," leaving it to consumers to discover that the *ipso facto* clause of the Lease is prohibited by the Bankruptcy Code.

Accordingly, Defendants' motion to dismiss Plaintiff's claim that the *ipso facto* provision in Paragraph 17 of the Lease violated Section 15 of the TCCWNA is denied.

### ii.      Section 16 of the TCCWNA

Section 16 of the TCCWNA provides, in relevant part, that:

> No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that this shall not apply to warranties.

N.J.S.A. 56:12-16.  As the New Jersey Supreme Court has explained, this provision requires a consumer contract, notice, or sign to "clearly identify which provisions are void, inapplicable, or unenforceable in New Jersey."  *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 427 (2013).  "In other words, a contract or notice cannot simply state in a general, nonparticularized fashion that some of the provisions of the contract or notice may be void, inapplicable, or unenforceable in some states."  *Id.* at 427-28.

Following *Shelton*, a number of federal and state courts have grappled with Section 16 to determine when the inclusion of so-called "savings" language, such as "where permitted by law," "maximum amount allowed by law," or "unless prohibited by law," trigger Section 16's specification requirement by "stat[ing] that any of [a consumer contract, notice, or sign's] provisions is or may be void, unenforceable or inapplicable in some jurisdictions." N.J.S.A. 56:12-16.  These decisions have interpreted and refined the contours of Section 16 in two important ways.

First, Section 16's specification requirement is only implicated when a consumer contract, notice, or sign is or may be used in multiple jurisdictions.  *See Walters*, 2016 N.J. Super. Unpub. LEXIS 498 at *16 ("If a consumer contract is or may be used in multiple jurisdictions and expressly states that any of its provisions are or may be void, unenforceable, or inapplicable in certain of those jurisdictions, the contract must specify how these provisions are void, unenforceable, or inapplicable in New Jersey.").   In contrast, Section 16's specification requirement is *not* implicated where the consumer contract, notice, or sign at issue is drafted specifically for use in New Jersey and controlled by New Jersey law.  *Castro v. Sovran Self Storage, Inc.*, 114 F. Supp. 3d 204, 213 (D.N.J. 2015).  *Cf. Martinez-Santiago*, 38 F. Supp. 3d at 511.  This interpretation of Section 16 logically flows from the fact that, where a contract is drafted specifically for use in New Jersey, there is no need to explain which provisions may or may not be enforceable under New Jersey law because requiring such a specification would be redundant. Indeed, when the contract, notice, or sign is a New Jersey-specific document, the savings language merely "operates as a severability clause, protecting the remainder of the contract should some portion of it be declared void or unenforceable." *Castro*, 114 F. Supp. 3d at 213.

Second, where savings language merely represents an "attempt by the drafter to conform to New Jersey laws," Section 16's specification requirement is not triggered.  *See Martina v. LA*

*Fitness Int'l, LLC*, No. 12-2063, 2012 U.S. Dist. LEXIS 125209, at *10-11 (D.N.J. Sept. 4, 2012). However, where the savings provision could be interpreted to *imply* that some terms of the contract may be unenforceable in some jurisdictions, courts have found such provisions trigger the specification requirement even though they do not expressly use the "magic words" contained in Section 16, *i.e.*, that some provisions "may be void, unenforceable or inapplicable in some jurisdictions." *See Gomes v. Extra Space Storage, Inc.*, No. 13-0929, 2015 U.S. Dist. LEXIS 41512, *19-20 (D.N.J. Mar. 31, 2015); *Martinez-Santiago*, 38 F. Supp. 3d at 511. As one court explained:

> Although Defendant is technically correct that the language does not expressly state, in a simple, declarative sentence, that some provisions may be invalid under state law, the savings clause necessarily implies that assertion by describing the consequences of that reality. Defendant cannot escape the dictates of N.J.S.A. 56:12-16 by drafting a conditional sentence rather than a declarative one about the validity or enforceability of certain terms and proceeding directly to the implications of that circumstance.

*Martinez-Santiago*, 38 F. Supp. 3d at 511. In other words, a consumer contract need not unequivocally express that some provisions may be unenforceable to trigger the specification requirement of Section 16 – savings language which *implies* that some of its provisions may be unenforceable is sufficient to "state" that some of its terms are or may be unenforceable in some jurisdictions under Section 16.[11]

---

[11] The Court notes that while courts are in agreement that a contract that "implies" that its terms are unenforceable in any jurisdiction triggers Section 16's specification requirement, there is some disagreement regarding how such an implication is stated. *Compare Martinez-Santiago*, 38 F. Supp. 3d at 511 (finding that phrase "If any provision of this Lease/Rental Agreement shall be invalid or prohibited under [the law of the state where the rental property is located], such provision shall be ineffective only to the extent of such prohibition or invalidity" sufficiently implied unenforceability in some jurisdictions so as to trigger Section 16), *with Greenberg v. Mahwah Sales and Services, Inc.*, Dkt. No. BER-L-6105-15 at *7 (Law Div. Jan. 8, 2016) (Wilson, J.) ("The phrase 'unless prohibited by law' does not offend TCCWNA because it does not state that the provision's enforceability varies by state."); *Barbarino v. Paramus Ford, Inc.*, Dkt. No's. BER-L-2856-15; BER-L-3010-15, 2015 N.J. Super. Unpub. LEXIS 2197, *10 (Law Div. Sept. 11,

Based on the foregoing, this Court holds that to state a claim under Section 16 of the TCCWNA, a plaintiff must allege three elements:  (1) the existence of consumer contract, notice, or sign that is or may be used in multiple jurisdictions; (2) which states, either expressly or implicitly, that any of its provisions may be void, unenforceable, or inapplicable in some jurisdictions; and, (3) that the consumer contract, notice, or sign fails to specify which provisions are or are not void, unenforceable, or inapplicable in New Jersey.[12]  Applying this test to the matter at hand, this Court holds that Plaintiff has failed to allege a violation of N.J.S.A. 56:12-16.

First, with respect to the Lease (Count I), Plaintiff has sufficiently alleged the first and third elements of his Section 16 claim.  Like the lease in *Martinez-Santiago*, the Lease in this matter is a consumer contract which contemplates use in multiple jurisdictions.  *Compare* Compl. Ex. A ¶ 23 ("This Lease shall be governed by and construed and enforced in accordance with the laws of the state where the Property is located."), *with Martinez-Santiago*, 38 F. Supp. 3d at 511 ("Lease/Rental Agreements shall be governed and construed in accordance with the laws of the

---

2015) (Wilson, J.) ("The phrase 'unless prohibited by law' does not explicitly or impliedly state that the provisions may be invalid under New Jersey law."), *appeal docketed*, No.'s A-795-15; A-796-15.

[12] The parties also dispute whether a fourth element is required -- that one or more of the provisions of the consumer contract, notice, or sign is alleged to be void, unenforceable, or inapplicable in New Jersey.  However, a plain reading of Section 16 of the TCCWNA indicates that when a consumer contract states that any of its provisions may be void, unenforceable, or inapplicable in some jurisdiction, it is required to then specify "which provisions *are or are not* void, unenforceable or inapplicable within the State of New Jersey[.]"  N.J.S.A. 56:12-16 (emphasis added).  Thus, it would appear that even if every term of consumer contract is enforceable in New Jersey, if the contract states (explicitly or implicitly) that some terms may not be enforceable in some jurisdictions, it must also state that all of its terms are enforceable in New Jersey to satisfy Section 16.  Nevertheless, even if this were an element of Plaintiff's claim, he has clearly satisfied it by alleging that several provisions of the Lease are not enforceable under New Jersey law.  *See supra* Sec. III.A.i.

state in which the Premises are located.").  And the Lease fails to specify anywhere which terms are or are not void, unenforceable, or inapplicable in New Jersey.

However, with respect to the second element, Plaintiff has only identified one provision which "state[s]," either expressly or implicitly, that any of its provisions may be void, unenforceable, or inapplicable in some jurisdictions.  The Complaint identifies five provisions of the Lease that Plaintiff alleges trigger Section 16 of the TCCWNA:

- "Upon the occurrence of any such default by Occupant, Owner may, in addition to and in lieu of any other remedies set forth herein *or otherwise available at law or in equity*, terminate this Lease in the manner provided by law."  Compl. ¶ 96(a), Ex. A ¶ 15 (emphasis added);

- CubeSmart "may sell the Personal Property . . . at public or private sale *in the manner permitted by applicable law*."  *Id.* at ¶ 96(b), Ex. A ¶ 15 (emphasis added);

- "Nothing set forth herein shall limit or prejudice the right of Owner to provide for and obtain as damages, by reason of a default under this lease, the maximum amount of damages *allowed by applicable law* in effect at the time when such default occurs."  *Id.* at ¶ 96(c), Ex. A ¶ 15 (emphasis added);

- Any property remaining in the storage space after termination of a lease will be deemed abandoned and may either be retained by CubeSmart "or sold in the manner provided in Paragraph 15 *or as otherwise permitted by applicable law*."  *Id.* at ¶ 96(d), Ex. A ¶ 16 (emphasis added); and

- "*To the extent permitted by law*, Owner and Occupant each waives its right to trial by jury in any proceeding. . . ."  *Id.* at ¶ 96(e), Ex. A ¶ 28 (emphasis added).

Each of the complained of provisions above does not expressly state, or even imply, that the terms of the Lease may not be enforceable in any jurisdiction and, therefore, do not trigger the specification requirement of N.J.S.A. 56:12-16.  Instead, these savings clauses merely represent an "attempt by the drafter to conform to New Jersey laws."  *Martina*, 2012 U.S. Dist. LEXIS 125209 at *10-11.  The phrases "or otherwise available at law or in equity" and "or as otherwise permitted by applicable law," as used in Paragraphs 15 and 16, represent an effort to ensure that Defendants reserve their rights, in addition to those explicitly set forth in the Lease, that

Defendants might otherwise possess under applicable law (*i.e.*, to defeat any attempt to limit Defendants to just the rights and remedies explicitly stated in the Lease under an *exclusio alterius* argument).  The phrase "in the manner permitted by applicable law," as used in Paragraph 15, represents an effort to incorporate ancillary requirements under applicable law, which are not spelled out in the Lease.  The phrase "allowed by applicable law," as used in Paragraph 15 to qualify the maximum value of damages that Defendants are permitted to seek, merely ensures that Defendants always reserve the right to seek the highest amount permissible available in the applicable jurisdiction.  Finally, the phrase "[t]o the extent permitted by law," as used in Paragraph 16 to limit the parties' waiver of the right to trial by jury, acts to ensure that all such rights that may be waived in a jurisdiction are so waived.  *See Walters*, 2016 N.J. Super. Unpub. LEXIS 498, *26-27 (finding no violation of Section 16 for provisions which provided "You and we reject PIP, medical payments, no-fault and uninsured and under-insured motorist coverage, where permitted by law," because "Section 16 of TCCWNA does not obligate [Defendant] to provide a consumer with a complete dissertation of New Jersey PIP law.").

Second, with respect to the Rider (Count II), Plaintiff alleges Section 16 is triggered by the provision that states:  "[i]n the event Occupant is in default under the Lease and Owner, *if permitted by law*, proceeds with an auction of Occupant's Personal Property, Occupant shall pay an auction fee in the amount of $95.00, in addition to all other reasonable costs of sale."  Compl. ¶ 101, Ex. B ¶ 7(D) (emphasis added).  Importantly, however, the Rider is a New Jersey-specific document (albeit one attached to a multi-jurisdictional contract).  Thus, this provision instead acts like a severability clause, protecting the remaining clauses of the Rider in the event that a local ordinance or municipal code provision might prohibit auctions or auction fees.  *See Castro*, 114 F. Supp. 3d at 213.  Therefore, this language does not implicate Section 16's specification requirement.

Accordingly, Defendants' motion to dismiss is granted with respect to (1) those aspects of Count I of the Complaint which assert a violation of N.J.S.A. 56:12-16 (Compl. ¶¶ 95-96), and (2) Count II of the Complaint.   Plaintiff's claims alleging violations of N.J.S.A. 56:12-16 are dismissed without prejudice.[13]

### B.   Consumer Fraud Act Claim (Count III)

In Count III of the Complaint, Plaintiff alleges that Defendants violated the CFA based on the Lease's $5,000 storage limitation having been set forth in an improper typeface.  Specifically, Plaintiff alleges that Paragraph 9 of the Lease provides – in 8 point font, non-bolded, and non-underlined text – that "Occupant shall not store any Personal Property in the Space with a total value in excess of $5,000.00 without prior written consent of owner."  Compl. ¶¶ 109-10; Ex. A ¶ 9.  However, in 2013, after Plaintiff executed the Lease, the New Jersey Legislature amended the SSFA to require that liability limitations like the one contained in Paragraph 9 of the Lease be "printed in bold type or underlined in the rental agreement."  N.J.S.A. 2A:44-193, *L.* 2013, *c.* 128, § 3, eff. Aug. 9, 2013.  Therefore, Plaintiff alleges that Defendants engaged in "unlawful conduct" by renewing the terms of the Lease after August 2013 without updating the typeface of Paragraph 9 to comply with the bold/underlining requirement set forth in N.J.S.A. 2A:44-193.  Compl. ¶¶ 113-14, 118.  Defendants argue that Plaintiff has failed to sufficiently plead a violation of the CFA by failing to allege unlawful conduct by Defendants and a causal connection between any unlawful conduct and his ascertainable loss.

---

[13] The Court notes that there is an appeal pending in the state courts of New Jersey that concerns the application of Section 16 of the TCCWNA.  *See Barbarino*, No.'s A-795-15; A-796-15.  In the event that the New Jersey Supreme Court provides a different interpretation of the TCCWNA during the pendency of this case, under which Plaintiff's Section 16 claims would be sufficient, Plaintiff may seek leave to file an amended complaint to re-assert his claims that the savings clauses contained in the Lease and Rider violate Section 16 of the TCCWNA.

A CFA claim requires a plaintiff to establish three elements: (1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *Myska v. New Jersey Mfrs. Ins. Co.*, 440 N.J. Super. 458, 484 (App. Div.) (quoting *Zaman v. Felton*, 219 N.J. 199, 222 (2014)), *certif. granted*, 223 N.J. 551 (2015); *see also Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. Appx. 94, 103 (3d Cir. 2013) (quoting *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011)).  Even assuming, without deciding, that Defendants engaged in "unlawful conduct," as that term is defined in N.J.S.A. 56:8-2, by failing to update the bolding/underlining of Paragraph 9 of the Lease after August 2013 to comply with N.J.S.A. 2A:44-193, Plaintiff has failed to allege a causal connection between Defendants' allegedly unlawful conduct and his ascertainable loss.  "[T]he CFA requires a consumer to prove that the loss is attributable to the conduct that the CFA seeks to punish by including a limitation expressed as a causal link." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 555 (2009) (citations omitted).  "[A] plaintiff must establish 'the extent of any ascertainable loss, particularly proximate to a misrepresentation or unlawful act of the defendant condemned by the [Act].'" *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 473 (1988) (quoting *Ramanadham v. N.J. Mfrs. Co.*, 188 N.J. Super. 30, 33 (App. Div. 1982)).  "In other words, the alleged unlawful practice must be a proximate cause of the plaintiff's ascertainable loss." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012).

Plaintiff alleges his ascertainable loss is the value of his personal property and moving costs.  Compl. ¶ 119(a), (b).  However, with respect to the value of his personal property, Plaintiff has failed to allege how this loss is causally connected to the alleged unlawful conduct.  Plaintiff does not allege that he would not have stored the property in the rental unit after August 2013 had the Lease been properly updated, or that he would have sought written consent from Defendants

to store (or continue to store) personal property with a value in excess of $5,000, or even whether he would have opted to participate in the Cubesmart Property Guard Program.  Moreover, with respect to the moving costs, Plaintiff alleges that he was already moving his personal property when he discovered the water damage; indeed, as Plaintiff alleges, he first "noticed" his personal property "was wet" "[a]fter [he] began to unload the rented storage unit" to "move their personal property out and have it shipped to a new home in Florida." *Id.* at ¶¶ 39, 46-47.  Therefore, Plaintiff would have incurred these moving costs regardless of whether the Lease was updated or not.  Accordingly, Count III of the Complaint is dismissed without prejudice.

### C.  Individual Liability of Defendant Marr.

Finally, Defendants move to dismiss all of the Counts of the Complaint insofar as they are asserted against Defendant Marr individually, arguing that Marr is not subject to the TCCWNA because Plaintiff's contract was executed with CubeSmart and Marr is not a party to that contract.  In response, Plaintiff argues that he has alleged that Marr is a seller, lessor, creditor, lender, or bailee and, therefore, Defendants' motion should be denied.

With respect to individual liability, although the TCCWNA was enacted for "broad remedial purposes" similar to those underling the CFA, the TCCWNA does not contain a similarly expansive definition of a "person," as appears in N.J.S.A. 56:8-1(d), which courts have interpreted as providing sufficient statutory authority for the imposition of individual liability under the CFA without the need to engage in an piercing-the-corporate-veil analysis when considering individual liability in connection with the alleged unlawful activity of a business entity.  *See Allen v. V & A Bros., Inc.*, 208 N.J. 114, 131 (2011); *see also Ceballo v. Mac Tools, Inc.*, No. 11-4634, 2011 U.S. Dist. LEXIS 114955, *10-11 (D.N.J. Oct. 5, 2011).  Whereas the CFA prohibits "persons" from engaging in consumer fraud, the TCCWNA's prohibition focuses specifically on sellers, lessors,

24

creditors, lenders, and bailees.  N.J.S.A. 56:12-15.  Here, while Plaintiff's allegations groups Marr together with the other Defendants collectively in the Complaint, Compl. ¶ 91, the Complaint is clear that Plaintiff leased the rental unit from U-Store-It, "an associated name of Defendant CubeSmart Asset Management, LLC." *Id.* at ¶ 19.  The allegations that are specific to Marr allege only that Marr is the President of Cubesmart, *id.* at ¶ 13, and that Marr set the policies and practices of Cubesmart complained of in the Complaint.  *Id.* at ¶¶ 14-15.  These allegations are not sufficient to hold Marr personally liable under the TCCWNA.  Nor has Plaintiff alleged sufficient facts that would allow this Court to pierce the corporate veil and hold Marr responsible for the actions of the other corporate defendants.  *See Circuit Lighting, Inc. v. Progressive Prods.*, No. 12-5612, 2013 U.S. Dist. LEXIS 119810, *15-16 (D.N.J. Aug. 23, 2013).  Accordingly, all Plaintiff's claims against Marr are dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in part.

Dated: April 21, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge

25